May it please the Court, my name is Mark Caldwell. I'm representing Ms. Woody this morning in this Social Security Disability Appeal. With the Court's permission, I would like to reserve two minutes of my time for rebuttal, and of course I will keep track of my own time. I know the Court is familiar with the facts of this case, so let me proceed, if I may, to what I think are the important issues. I believe this case is an opportunity for this Court to clarify some confusion that has been created by a couple of cases. This case, as you know, involves the crediting as true doctrine, namely in a Social Security case, if the evidence improperly rejected by an administrative law judge clearly establishes disability, and there are no other issues that must be decided, then the proper remedy is to credit that evidence as true and remand for determination of benefits rather than for further administrative proceedings. Now, the two cases that I'm referring to are Conant and Vasquez. And there is one sentence in Conant that has just created all sorts of confusion, and that is a statement by the Court that we are not convinced that the crediting as true rule is mandatory in the Ninth Circuit. What that has come to mean is that there is discretion in terms of applying the rule, and I submit that that is not true. In Varney, this Court said that there's a split in authority. No one can read Varney-Vasquez, rather. In Vasquez, the Court said there was a split in authority. No one can read Varney II, which is the 1988 case that established the crediting as true rule, and have any doubt but that the rule is mandatory. Here is where the discretion applies. The discretion applies in deciding whether the rule applies to the facts of a particular case. In other words, a Ninth Circuit court certainly has discretion to decide whether the ALJ improperly rejected the evidence, whether, if that evidence was credited as true, a finding of disability would necessarily follow, and whether there are no other issues that must be decided. However, once a court exercises its discretion in deciding that the answer to all three of those questions is affirmative, then Varney II and all the cases that have come after it, Smolin, Lester, Reddick, Beneke, indicate that the application of the rule then becomes mandatory. That's what Varney II meant. So that is where the confusion needs to be cleared up in terms of whether the rule is mandatory or discretionary. It's discretionary to decide whether the rule applies. Once the rule applies, the result is mandatory under Varney and its various other cases that have come after it. Now, in this particular case, Ms. Woody's testimony established limitations that are inconsistent with the ability to sustain work activity on a regular and continuing basis. And let's keep in mind that at the fifth step of the sequential evaluation process, it's the Commissioner's burden to show that a claimant can perform other work on a regular and continuing basis. Social Security Ruling 96AP defines that as 8 hours a day, 5 days a week, or an equivalent work schedule. Ms. Woody testified to two things that I think are important. One, regarding her migraine headaches, they hit her about 10 to 12 times a month, and during that period of time, she's absolutely incapacitated. She has to take her Imatrix. The Imatrix knocks her out. She has to go in a dark room. Now, the district court seized on rationale not employed by the ALJ. The district court said, well, there's no evidence that that satisfied the 12-month durational requirement. As I say in my brief, and I certainly don't need to go through it all over again, it clearly did satisfy the 12-month durational requirement. I went through and gave you date by date by date by date by date where she had that 12 months. But here's the second thing that I think is important. She also testified to problems with her fibromyalgia, and the rheumatologist said that the headaches were a component of the fibromyalgia. And that's Dr. Fairfax. And the orthopedist, Dr. Houston, said that her neck pain, although she does have orthopedic problems, was also a manifestation of her fibromyalgia. Now, let's put the vocational expert testimony about the migraine headaches to one side, and let's just focus on Ms. Woody's testimony as it appears on its face. And that is, she said, in a typical day, I can sit in more than 20, 25 minutes. Then I have to get up and move around, and I have to go lay down. And in a typical day, she said, I have to lay down about an hour. Now, let's compare that testimony with the Commissioner's burden under Social Security Ruling 96AP to show that a person can work eight hours a day, five days a week. Well, didn't you ask the vocational expert a question based on her testimony, didn't you, if I understand correctly? That's correct. But I asked the vocational expert a question pretty much based upon her testimony on the migraine headaches. If a person is incapacitated 10 to 12 times a month, can that person sustain work? And the vocational expert said no. And then the answer is there would be no work. Correct. But if we look at the district court's rationale, which just focused on the migraine headaches, we can go beyond that, is what I'm saying. Beyond that, she said the overall constellation of my symptoms causes me to lay down every single day for an hour. Now, here's my point. Do we need vocational expert testimony to ask whether a person who has to lay down an hour of every single day can perform a job eight hours a day, five days a week? No, we don't. And that's the Beneke case. The Beneke case said, well, yes, there was a vocational expert present, and yes, the vocational expert could have been asked this question. But, you know, the vocational expert really didn't need to be asked that question because it's facially obvious that a person with those limitations can't sustain work eight hours a day, five days a week. So that is where I think the district court rationale went awry, aside from the fact, as I already mentioned, the district court was invoking rationale not invoked by the administrative law judge. The other point I would simply make about the crediting is true rule is that social security cases are different. The statute specifically says, unlike other administrative schemes, a federal court has the authority to remand with or without a new hearing. So Congress recognized that social security cases are different, and this court recognized that social security cases are different. The best two cases are Varney 2 and Beneke because claimants face tremendous financial hardships while their cases are pending upon remand. And as I think I pointed out in my brief, the conic court relied upon Burns v. Shalala. I represented Jimmy Burns. Jimmy Burns died before the administration made a decision on his case. I can't think of a better illustration why the crediting is true rule is important. I'm coming up on my two minutes. With your permission, may I reserve? Yes, certainly. Thank you. Good morning, Your Honors. My name is Leo Montenegro, counsel for the Appellee Commissioner of Social Security. Everyone agrees that the ALJ's decision in this case was insufficient and incomplete. The Commissioner moved for remand in this case for that purpose, remand for further administrative proceedings to cure that insufficiency and that incompleteness. Claimant had originally sought judicial review of the ALJ's decision and requested either remand for further administrative proceedings or payment of benefits. Claimant received part of what they requested, that is, remand for further proceedings. Now, claimant wants more. Claimant wants a straight-out award of benefits by the court. Counsel. Yes, Your Honor. Spell out for us what the incompleteness is. Well, Your Honor, the district court identified two problems with the ALJ's decision and a resulting third problem. The two basic problems were the ALJ's credibility finding, which was not well articulated, and the ALJ's resolution of the medical evidence. The ALJ had found that the claimant did have certain medical problems that resulted in certain functional limitations. However, the functional limitations that the ALJ assessed weren't related by the ALJ to any specific medical evidence. There was medical evidence in the record to support the ALJ's finding, but the ALJ, in fact, either didn't discuss that evidence or rejected it. So it's just not clear how the ALJ reached that important conclusion about what the claimant could do despite her impairments. So with those two problems, the district court also pointed out that vocational expert testimony would need to be, well, would need to be adduced in order to address the functional limitations once the ALJ sorted out those two problems with credibility and the medical evidence. Well, on the credibility, if we accept these various problems such as the migraines and the pain from fibromyalgia and all of these other things, it's hard to think that one could not believe that she was having pain and that she was having to accommodate herself by lying down and doing these various things, which seems to make it quite clear, it seems to me, unless you can persuade us otherwise, that she's entitled to benefits. Well, Your Honor, the district court reviewed the ALJ's decision and reviewed the record, and within its discretion, it fashioned a certain remedy based on its understanding of the case as it explained in its order. And it was troubled not just by the credibility finding, but also, as it points out, as an independent basis to remand for further proceedings with the ALJ's analysis of the medical evidence. So understanding the case, the district court chose to remand for further proceedings. I disagree with my opposing counsel to the extent that he argues that the discretion lies elsewhere. The court's discretion, the district court's discretion lies in the fashioning of the remedy. What is our standard of review of the district court's decision in this case? Well, since it's a matter committed to the district court's discretion, Your Honor, it's for abuse of discretion. Under Harmon v. Apfel cited in the briefs, it's abuse of discretion in the fashioning of that remedy in the district court's choice, given these circumstances and the unique facts of this particular case and this particular individual as to whether the ALJ's decision needs further development. Now, if we were to remand, exactly what is your understanding of what the ALJ would be required to do? I'm sorry, Your Honor. If this court were to affirm the district court's remand for further proceedings? Yes. Then what exactly would the ALJ do under that remand? The ALJ would allow the claimant to offer new evidence pertaining to her disability. The original ALJ's decision would be vacated, so it's as if there were no final administrative decision at all. Claimant's application would still be alive, and claimant's disability would need to be considered up until the point of a new final decision by the commissioner. So new evidence would probably need to be taken. A new hearing would probably occur, and claimant, if she chooses, would testify and develop the record further. The ALJ would issue a new decision, which would likely become the commissioner's final decision, unless administrative, internal administrative processes find fault with it and require it to be redone again administratively. Is that a necessary outcome? Would it be possible for the agency to reconsider the decision based on the record previously made? If this case were remanded for further proceedings, I don't think that the ALJ in this particular case could issue a new decision based solely on the existing administrative record, the record that's before the court, because, as I said, the claimant's record would still be open. There would be the issue not just of disability during the time that was already considered, but the issue of whether claimant was disabled up until the point of a new administrative final decision. And any new proceedings would allow for the development of the evidence by both parties, that is, by both the commissioner in its adjudicative capacity, and also by the claimant to the extent that she wants to offer any new evidence, offer any testimony to explain or refute anything that she said or that the commissioner of the ALJ finds. Your Honor, the district court identified those two problems with the ALJ's decision. It was within the district court's decision to fashion this kind of remedy to the extent that there are any one of those issues or other issues perhaps might suggest to this Court a remand for payment of benefits. I'd point the Court to Harmon v. Apfel, which says that regardless of the other reasons raised by the claimant, that there were sufficient unanswered questions in the record to warrant the district court's remand for further proceedings, and since that was within the district court's discretion, the Harmon court affirmed. And also I'd point out that as recounted by the Conant court, there were multiple cases in which the Ninth Circuit remanded for further proceedings solely for the purpose of having a credibility finding redone by the ALJ. So to the extent that this case may be to the extent the claimant argues that the case law does not directly. Well, Conant, as I recall, was about a 2003 case, and Vasquez is a 2009 case. And granted, one panel can't overrule another panel, but in that situation, shouldn't we rely on Vasquez, which is the most recent statement of the credibility conundrum? I think it's – I understand the desire for more clear rules on these matters, except that, again, I have to point out that this is committed to the district court's discretion, I think because these are individual cases. Well, that's actually not my question. My question is, when we wrestle with the idea of what to do when the credibility determination has not been adequately supported, which case is the one that describes the proper rule? Is it 2003 Conant? Is it 2009 Vasquez? Is it both? Are they not in conflict in your view? I think they're in conflict to the extent that they purport that there's a certain mandatory rule that needs to be followed in these discretionary matters. Again, these cases are highly individualized because of the evidence unique to each individual in the case. And in this case, the district court felt a particular way about this evidence. The Vasquez court found a problem with the ALJ's credibility finding and also with the analysis of a mental impairment and reunited for further proceedings on that mental impairment. The Conant court, I remember largely because it just pointed out these problems, these conflicting cases as to the credit as true rule. And I think if there's any way to resolve them, it's to acknowledge that different results are going to be reached depending on the facts of each case, and the facts of each case are best assessed on judicial review by the district court within its discretion in this limited area of fashioning a remedy. In short, the district court felt that was the appropriate remedy in this case. And just because there was a problem with the ALJ's credibility finding doesn't limit the district court's discretion in that regard. Do we defer at all to that, or are we just sitting anew? I mean, certainly on the merits of the summary indictment, we always just step into the shoes of the district court, and we don't have to worry about what the district court did by reviewing the ALJ's decision. Do we owe anything to the district court's discretionary election of a remedy? Well, it's the abuse of discretion standard, Your Honor. And just because the district court is most familiar with the record having reached this decision, and it felt that this was the correct remedy in this case based on these facts, and there's no clear error within its discretion in fashioning that remedy, the Commissioner's position is that the district court's decision should be affirmed as to the remedy. If there are no further questions, I see I'm out of time. Thank you very much, counsel. The Commissioner is confused. The Commissioner stated before the district court that upon remand, the ALJ will reconsider treating, examining, and medical source opinions, and reassess plaintiff's residual functional capacity. Now the Commissioner is talking about new evidence being entered, which certainly was nothing that was talked about before the district court. But then the Commissioner is further confused, because now, before this Court, at page 22 of its brief, the Commissioner doesn't say, oh, no, this was all wrong, we need to redo the whole thing. The Commissioner now says the evidence, and I'm going to quote this directly, showed the claimant retained the ability to perform at least a range of light work. Which is it? Are they defending the ALJ decision, or are they saying the ALJ decision is wrong, and they can't have it both ways? And I think that this language in the Commissioner's brief shows the Commissioner doesn't want to look at this case again. The Commissioner wants to write a better, unfavorable decision, and that's wrong, as this Court said in both ways in there. Well, today, they're taking the position that the hearing should start all over again. So it's not really the --- I don't understand their position to be that they just want a new decision on the same record. That's what I'm saying, Judge. Which is it? They articulate one rationale at one point in time, another rationale at a different point in time, and today a different I'd like to address, if I may, quickly, the -- this discussion about how there's a conflict between cases. With all due respect, Judge, there really isn't a conflict. Conant wasn't wrong. It just had that unfortunate language about discretionary versus mandatory. But Conant was right. It applied the rule correctly, because Conant said there were many discrepancies between the claimant's testimony and the record, as the district court pointed out. And we can't rely upon the district court's decision, because that's post hoc rationale. Therefore, it has to go back. And you know what? I agree with that. I'm a claimant's attorney. But I will tell you that if there are many discrepancies between a claimant's testimony and the record, then that case shouldn't be sent back for payment of benefits. That case requires a further look. That's not this case. I see my time is up. Thank you. Thank you, counsel. The case just argued is submitted. We appreciate very much the arguments from both counsel.
judges: Fletcher B. , Canby, Graber